IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

UNIVALOR TRUST, SA, et al.,          :

     Plaintiffs,                              :

vs.                                                      :          CA 15-0414-KD-C

COLUMBIA PETROLEUM LLC, et al.,   :

     Defendants.

<u>REPORT AND RECOMMENDATION</u>

     This cause is before the Court on plaintiffs/counterclaim defendants' motion to dismiss counts two and three of defendants/counterclaimants' permissive counterclaim complaint (Doc. 135; *see also* Doc. 136), the defendants/counterclaim plaintiffs' response in opposition (Doc. 140), and the moving parties' reply (Doc. 142). Upon consideration of the foregoing documents (with attachments), as well as the extensive oral arguments of the parties on November 30, 2016, the undersigned **RECOMMENDS**, in accordance with 28 U.S.C. § 636(b)(1)(B) and S.D.Ala. GenLR 72(a)(2)(S), that the Court **GRANT** plaintiffs/counterclaim defendants' motion to dismiss (Doc. 135) and dismiss with prejudice counts two and three of the counterclaim complaint.

I.    <u>Background</u>

     This action was originally filed on August 13, 2015, by plaintiffs, Univalor Trust, SA and Forvest Financial Services Corp. (plaintiffs), against defendants Columbia Petroleum, LLC, Columbia International, LLC, Alabama Energy Holdings II, LLC, Benjamin Energy Holdings II, LLC, Occidental Energy Partners, Inc. and Chester F. English, III (defendants). (Doc. 1.) Plaintiffs' claims, as now amended, assert the breach of a contractual settlement agreement alleged to have been agreed to and entered into

by the parties, through their respective counsel, and seek the enforcement of that settlement agreement. (Doc. 91.)

On March 10, 2016, defendants answered plaintiffs' fourth amended complaint (Doc. 91) and asserted counterclaims for tortious interference with contract (Count 1), coercion/fraud (Count 2), civil conspiracy (Count 3) and negligence (Count 4). (Doc. 95.) On March 28, 2016, plaintiffs moved to dismiss defendants' counterclaims. (Doc. 99.) In response to plaintiffs' initial motion to dismiss, defendants moved to amend their answer/counterclaims on April 15, 2016, proposing 12 counterclaims: tortious interference (Count 1), intentional misrepresentation (Count 2), reckless misrepresentation (Count 3), innocent misrepresentation (Count 4), civil conspiracy (Count 5), negligence (Count 6), wantonness (Count 7), unjust enrichment (Count 8), accounting (Count 9), breach of contract (Count 10), conversion (Count 11), and breach of fiduciary duty (Count 12). (Doc. 105.)

On May 6, 2016, plaintiffs filed a response in opposition to defendants' motion to amend contending that leave to add defendants' 12 proposed counterclaims should be denied as futile. (Doc. 112.) The Court issued an Order on May 10, 2016, requiring defendants to respond to plaintiffs' opposition on or before May 24, 2016 (Doc. 113) and, in their reply submission, defendants presented arguments which made specific representations regarding the factual bases of their claims in contending that leave to file their proposed amended counterclaims should be granted (Doc. 114). Specifically, as to the breach of contract and conversion counterclaims, defendants represented: "The facts that are consistent with a breach of contract are very straightforward – that Plaintiffs agreed to have Parkland purchase Columbia's residuary interests and failed to do so…That was a breach of the acquisition agreement and Plaintiffs…were the breaching parties…Plaintiffs breached the acquisition agreement" (Doc 114, at 15); The

2

conversion claim "very clearly recites that Plaintiff…converted Defendant Columbia's interests in oil wells…There is no allegation that cash is converted – the claim is that specific, identifiable interests were converted." (*Id.*)

On June 21, 2016, the Court entered an Order granting in part and denying in part defendants' motion for leave to amend their counterclaims. (Doc. 118.) The Court denied leave to amend as to Counts 2-9 and 12. (*Id.* at 11, 12 & 14). The Court granted defendants' motion to amend as to Counts 1 (tortious interference), 10 (breach of contract), and 11 (conversion). (*Id.* at 12-14.) In its analysis that resulted in granting leave to add these particular counterclaims, the Court found: "Upon review of Defendants' allegations and the proposed answer/counterclaims, Defendants plead the existence of an express contract (the Acquisition Agreement)…As for Counts 10 and 11 for breach of contract and conversion, these counts are based on the claim that Plaintiffs agreed to have Parkland purchase Defendant Columbia's residuary interests but breached that agreement by failing to do so and failing to live up to the obligations of the 2010 Acquisition Agreement." (*Id.* at 12-13.)

In allowing defendants to amend to add the proposed claims for breach of contract and conversion, the Court recognized that issues remained as to the viability of those claims which were not yet procedurally before the Court. The Court noted that there was a disagreement as to whether plaintiffs were parties to the Acquisition Agreement, but concluded that disagreement "is not properly resolved in a futility analysis." (*Id.* at 13). "As to the conversion claim, the issue of whether oil and gas interests are subject to a conversion claim has not been adequately briefed. Thus, at this time the Court will allow the claim to proceed." (*Id.* at 13-14.)

Pursuant to the leave granted by the Court, the defendants filed an amended answer and counterclaim. (Doc. 121.) The amended counterclaim complaint identified

all defendants as "counterclaimants" (*id.* at ¶ 1), and presented the 3 counts the Court had allowed: tortious interference (Count 1), breach of contract (Count 2), and conversion (Count 3). (*Id.* at 18-20.)

Plaintiffs filed a motion (Doc. 135) and supporting brief (Doc. 136) seeking dismissal with prejudice of counts 2 and 3 of defendants' amended counterclaim complaint. As allowed by this Court's Order (Doc. 138), defendants filed an opposition (Doc. 140), to which plaintiffs submitted a reply (Doc. 142). On November 30, 2016, the undersigned held a lengthy hearing on plaintiffs' motion to dismiss, during which all parties presented extensive argument and discussion of the issues and authority germane to the pending motion.

## II.   Pleading Standard

The sufficiency of defendants' claims to proceed beyond the pleading stage, and into discovery, is governed by the plausibility standard articulated by the United States Supreme Court in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), and further detailed in *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). In *Twombly,* the United States Supreme Court expressly abrogated the *Conley v. Gibson,* 355 U.S. 41 (1957) "no set of facts" pleading standard, holding that test "has earned its retirement" and "is best forgotten." *Twombly*, 550 U.S. at 563, 127 S.Ct. at 1969; *Simpson v. Sanderson Farms, Inc.,* 744 F.3d 702, 714 (11th Cir. 2014) ("[T]he Supreme Court categorically retired [the no set of facts test] in *Twombly*.").

Post *Twombly,* "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. . . . Factual allegations must be enough to raise a right to relief above the speculative level[.]" *Twombly*, 550 U.S. at 555, 127 S.Ct. at 1965. The Court made clear that to satisfy the requirements of Fed.R.Civ.P 8(a) "something

4

beyond the mere possibility [of an entitlement to relief] must be alleged, lest a plaintiff with a largely groundless claim be allowed to take up the time of a number of other people[.]" *Id.* at 557-58, 127 S.Ct. at 1966 (internal quotation marks omitted; citations omitted). "This necessarily requires that a plaintiff include factual allegations for each essential element of his or her claim." *GeorgiaCarry.Org, Inc. v. Georgia,* 687 F.3d 1244, 1254 (11th Cir. 2012) (citations omitted), *cert. denied,* ____U.S.____, 133 S.Ct. 856, 184 L.Ed.2d 656 (2013).

The Court directed that "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Twombly,* 550 U.S. at 558, 127 S.Ct. at 1966 (internal quotations marks and ellipses omitted; citations omitted). "It is no answer to say that a claim just shy of a plausible entitlement to relief can, if groundless, be weeded out early in the discovery process[.]" *Id.* at 559, 127 S.Ct. at 1967. "[T]he threat of discovery expense will push cost-conscious defendants to settle even anemic cases…[;]it is only by taking care to require allegations that reach the level [of showing a plausible entitlement to relief] that we can hope to avoid the potentially enormous expense of discovery[.]" *Id.*

The Eleventh Circuit has likewise emphasized the importance of only allowing plausible claims to proceed beyond the pleading stage: "Federal Rules of Civil Procedure 8(a)(2) and 12(b)(6) together establish a notice-pleading standard that is applied, in a context-specific manner, with the recognition that the imposition of litigation costs must be justified at the threshold by the presence of factual allegations making relief under the governing law plausible, not merely speculative." *ABB Turbo Sys. AG v. Turbousa, Inc.* 774 F.3d 979, 984 (11th Cir. 2014); *see Chudasama v. Mazda Motor Corp.,* 123 F.3d 1353, 1367 & 1367-68 (11th Cir. 1997) (recognizing that "[d]iscovery

imposes several costs on the litigant from whom discovery is sought[]" and "discovery imposes burdens on the judicial system; scarce judicial resources must be diverted from other cases to resolve discovery disputes."); Fed.R.Civ.P. 1 (recognizing that the Rules of Civil Procedure "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding.").

In *Iqbal,* the Supreme Court gave additional definition to the Rule 8(a) analysis framed in *Twombly*. The Court explained that under *Twombly*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678, 129 S.Ct. at 1949 (internal citations omitted). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.* at 679, 129 S.Ct. at 1950. Courts do not "'accept as true a legal conclusion couched as a factual allegation[.]'" *Id.* at 678, 129 S.Ct. at 1950 (citation omitted); *see also id.* at 678, 129 S.Ct. at 1949 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[.]").

The *Iqbal* Court made clear that "[t]he pleading standard Rule 8 announces…demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* at 678, 129 S.Ct. at 1949 (internal citations omitted).  Consequently, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has

alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'" *Id.* at 679, 129 S.Ct. at 1950 (brackets and citation omitted). Therefore, dismissal of a factually insufficient complaint is required because "Rule 8…does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678-79, 129 S.Ct. at 1950.

In *American Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283 (11th Cir. 2010), the Eleventh Circuit Court of Appeals distilled the *Twombly*/*Iqbal* pleading standard into a functional "two-prong approach" for the evaluation of the sufficiency of a plaintiff's pled allegations: "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Id.* at 1290 (citation omitted). The Eleventh Circuit also explained: "Importantly, the Court held in *Iqbal*, as it had in *Twombly*, that courts may infer from the factual allegations in the complaint 'obvious alternative explanation[s],' which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer." *Id.* (citation omitted).

Additionally, it is well-established that dismissal is required when the factual averments in a complaint affirmatively foreclose the existence of a plausible entitlement to relief. *See, e.g., Villarreal v. R.J. Reynolds Tobacco Co.*, 839 F.3d 958, 971 (11th Cir. 2016) ("A plaintiff nonetheless can plead himself out of court by alleging facts that foreclose a finding of diligence or extraordinary circumstances, both of which are required for equitable tolling."); *Best Canvas Prods. & Supplies, Inc. v. Ploof Truck Lines, Inc.*, 713 F.2d 618, 621 (11th Cir. 1983) ("[A] party is bound by the admissions in his pleadings."). "[A] plaintiff can plead himself out of court. If he alleges facts that show he isn't entitled to a

judgment, he's out of luck." *Early v. Bankers Life & Cas. Co.,* 959 F.2d 75, 79 (7th Cir. 1992) (internal citations omitted).

### III.   <u>Defendants' Claims</u>

First, because defendants were required to obtain leave to assert these permissive counterclaims, the scope of the claims must be limited to the specific leave defendants were granted by the Court (Docs. 113 & 118). *See* Fed.R.Civ.P. 15(a)(2); S.D.Ala. CivLR 15. The defendants sought, and obtained, leave to bring a breach-of-contract claim alleging that "Plaintiffs breached the acquisition agreement" and a conversion claim alleging that Plaintiffs "converted Defendant Columbia's interests in the oils wells." (Doc. 114, at 15; *compare id. with* Doc. 118, at 12-14.)

In addition to the pled averments relevant to these two permissive counterclaims, documents which are referenced in, or central to, the claims presented are incorporated as exhibits to the complaint, and may be considered without converting a Fed.R.Civ.P. 12(b) motion to dismiss into a Fed.R.Civ.P. 56 motion for summary judgment. *Horsley v. Feldt,* 304 F.3d 1125, 1134 (11th Cir. 2002); *see also Day v. Taylor,* 400 F.3d 1272, 1276 (11th Cir. 2005). "A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed.R.Civ.P. 10(c). Therefore, in ruling on a motion to dismiss, courts consider "the well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." *La Grasta v. First Union Sec., Inc.,* 358 F.3d 840, 845 (11th Cir. 2004) (citations omitted). "Indeed, when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern." *Griffin Indus., Inc. v. Irvin,* 496 F.3d 1189, 1206 (11th Cir. 2007) (citations omitted), *cert. denied,* 553 U.S. 1004, 128 S.Ct. 2055, 170 L.Ed.2d 794 (2008).

Because the Acquisition Agreement is both referenced in, and central to, counts two and three, and was attached to plaintiffs' motion to dismiss without objection from defendants (*see* Doc. 135-1), the Court will consider the terms of that contract as part of the pleadings in weighing the sufficiency of the breach-of-contract and conversion claims to state plausible claims for relief. *Brooks v. Blue Cross & Blue Shield of Florida, Inc.,* 116 F.3d 1364, 1369 (11th Cir. 1997) (quoting *Venture Assoc. Corp. v. Zenith Data Sys. Corp.,* 987 F.2d 429, 431 (7th Cir. 1993) ("Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and central to her claim.").)

In pleading the breach-of-contract claim, defendants averred that "Univalor/Forvest agreed to have Parkland purchase Columbia's residuary interests and breached that agreement by failing to do so and by failing to live up to their obligations under the Accusation [*sic*] Agreement." (Doc. 121, at 19 ¶ 35.) As to the residuary interest allegation, defendants' factual averments establish that it claims the breach of an alleged amendment to the Acquisition Agreement, "[a]s set out in paragraph 12" (*id.*), wherein defendants allege that Parkland was to "purchase Columbia's residuary interest in consideration for Columbia's consummation of the Acquisition Agreement." (*Id.* at 13, ¶ 12; *see* Doc. 114, at 15.)

A number of the terms of the Acquisition Agreement are also directly material to the plausibility of defendants' breach of contract claim against plaintiffs. Initially, the Acquisition Agreement unambiguously declares that it was exclusively "made by and between Columbia Petroleum, LLC ("Working Interest Owner"), and Parkland Energy Services, Inc. ("Purchaser")" (Doc. 135-1 at 1 & 14), and declares that Parkland "is acquiring the Subject Interests for its own account" (*id.* at 8, § 4.1(b)). Further, the instrument shows that Parkland is the only entity to which the oil and gas interests are

being conveyed, and the only entity obligated to tender any performance Columbia is due in exchange for that conveyance. "Subject to and in accordance with the terms hereof, Working Interest Owner agrees to sell and convey to Purchaser, and Purchaser agrees to purchase from Working Interest Owner, the Subject Interests for the Purchase Price and agreements of Purchaser herein." (*Id.* at 3, § 2.1.)

The Acquisition Agreement also contains a merger clause which memorializes that the written contract "constitutes the entire agreement between the parties hereto with respect to the transactions described herein, superseding all prior negotiations, discussions, agreements and understandings, whether written or oral, relating to such subject matter." (*Id.* at 13, § 7.8.) The merger clause further provides that "[t]his Agreement may not be amended…except by a written document signed by the party to be charged with such amendment." (*Id.*). By its execution of the Acquisition Agreement, Columbia additionally affirmed that it had "made its own independent decision to enter into the transactions contemplated herein and as to whether such transactions are appropriate and proper for it based on its own judgment," and that it "is capable of assessing the merits of…and understands and accepts the terms and conditions and risks of, such transactions." (*Id.* at 7, § 3.1(q).)

Consistent with defendants' prior representation that their conversion claim was based on the factual contention that plaintiffs "converted Defendant Columbia's interests in oil wells" made in obtaining leave to add the conversion claim (Doc. 114, at 15), defendants allege that plaintiffs "converted Columbia's interests illegally and without consideration" (Doc. 121, at 20 ¶ 38.)  The terms of the Acquisition Agreement also bear on the plausibility of the conversion claim, in that the parties unambiguously declared, under the "Effective Conveyance of Property Interest" sub-section, that "the

Subject Interests will constitute an interest in real property under the laws of the State of Alabama." (Doc. 135-1, at 5 § 3.1(f).)

As framed by defendants' prior representations to the Court and pled averments, the breach-of-contract claim is premised upon the contention that Columbia did not receive the consideration it was due for the conveyance of its mineral interests under the Acquisition Agreement, and the conversion claim contends that Columbia's mineral interests were converted because Columbia did not receive that same consideration. (Doc. 121 at 12, 35 & 38; Doc. 114, at 15-16.) The Acquisition Agreement is the only contract pled as the basis of defendants' breach-of-contract claim – there is no other contract alleged to give rise to any obligation defendants claim was breached. Likewise, the pled subject matter of the conversion claim are Columbia's oil and gas interests conveyed to Parkland pursuant to the Acquisition Agreement. (Doc. 121, at ¶¶ 12, 14, 15, 35 & 38; Doc. 114, at 15-16; Doc. 118, at 12-14.)

IV.     **Authority and Analysis**

Initially, plaintiffs seek dismissal of the breach-of-contract and conversion counterclaims by all defendants other than Columbia Petroleum, LLC (Columbia) pursuant to Fed.R.Civ.P. 12(b)(1) and 12(h)(3), for lack of subject matter jurisdiction. (Doc. 135, at ¶ 3; *see also* Doc. 136, at 2 n.1.) Specifically, plaintiffs contend that because Columbia was the only defendant who was a party to the Acquisition Agreement, it was the only defendant with standing to initiate the breach-of-contract claim based upon the obligations created by the Acquisition Agreement, or to potentially assert a conversion claim based upon the oil and gas interests Columbia conveyed to Parkland pursuant to the Acquisition Agreement. (Doc. 135, at ¶ 3; *see also* Doc. 136, at 2 n.1.) In response, defendants agree and concede that all "other entities and English are due to be dismissed as counter-claimants." (Doc. 140, at 6). Therefore, the Court will only

further address the claims of the remaining counterclaimant, Columbia, for breach-of-contract and conversion.

Plaintiffs' motion to dismiss seeks the dismissal with prejudice of Columbia's breach-of-contract and conversion counterclaims (*see* Doc. 121, at Counts 2 and 3) pursuant to Fed.R.Civ.P. 12(b)(6) (Docs. 135 & 136.) Plaintiffs primarily contend that the breach-of-contract claim is not plausible because plaintiffs were not parties to the contract alleged to have been breached – the 2010 Acquisition Agreement. (Doc. 135, at ¶ 4; Doc. 136, at 7-14.) Plaintiffs' threshold argument in seeking dismissal of the conversion claim is that oil, gas and other mineral interests are real property interests, and Alabama law does not recognize a conversion claim for the taking of real property. (Doc. 135, at ¶¶ 5-6; Doc. 136, at 14-15.) Plaintiffs further contend that both the breach-of-contract claim and the conversion claim are barred by Alabama's Statute of Frauds, Ala.Code § 8-9-2(3) & (5) (1975).

### A.    Breach-of-Contract

As shown, the only contract alleged to have been breached in the factual allegations of defendants' counterclaim complaint is the Columbia-Parkland 2010 Acquisition Agreement, and all damages under the breach-of-contract and conversion counter claims are alleged to flow from the breach of that Agreement. (Doc. 121, at ¶¶ 12, 14, 29, 35 & 38; Doc. 114, at 15; Doc. 118, at 12-14.) In response to plaintiffs' motion to dismiss, "Columbia agrees that neither Plaintiff is a signatory to the Acquisition Agreement and that the Agreement lists no specific obligations for either of them." (Doc. 140, at 3 n.1). Consequently, the disagreement of fact the Court found to be

12

beyond the scope of its prior futility analysis (*see* Doc. 118, at 13), no longer exists.[1] Now having the benefit of the Acquisition Agreement, and defendants' concession that neither plaintiff is a party to, or obligated by, that contract, the Court finds that there is no issue of fact and Columbia and Parkland are the only parties to the Acquisition Agreement. (*Compare* Doc. 135-1, at 1 & 14 *with* Doc. 140, at 3 n.1.)

With the parties to the allegedly breached Acquisition Agreement established, the Court determines that Columbia has not stated a plausible breach-of-contract claim. "The elements of a breach-of-contract claim under Alabama law are (1) a valid contract binding the parties; (2) the plaintiffs' performance under the contract; (3) the defendant's nonperformance; and (4) resulting damages." *Reynolds Metals Co. v. Hill*, 825 So.2d 100, 105 (Ala. 2002). As a matter of law, "without a contract, there can be no breach of a contractual duty." *Pate v. Rollison Logging Equip., Inc.*, 628 So.2d 337, 343 (Ala. 1993). Columbia concedes "that neither Plaintiff is a signatory to the Acquisition Agreement and that the Agreement lists no specific obligations for either of them." (Doc. 140, at 3 n.1.) Therefore, the Court concludes that Columbia has not, and cannot, state a plausible breach-of-contract claim against either plaintiff. "A duty created by a contract is one imposed upon *the party to the contract.*" *Industrial Dev. Bd. of City of Montgomery v. Russell,* 124 So.3d 127, 138 (Ala. 2013) (emphasis in original). "'It is hornbook contract law that someone who is not a party to a contract cannot be bound by the contract.'" *Ex parte Dickinson,* 711 So.2d 984, 989 (Ala. 1998) (citation omitted); *Edmonson v. Cooper Cameron Corp.,* 374 F.Supp.2d 1103, 1108 (M.D. Ala. 2005) ("A party

---

[1] Additionally, at the time the Court determined whether to grant defendants leave to amend to add the breach-of-contract claim, the Court had not been provided with the allegedly breached contract – the Acquisition Agreement. However, without contest from defendants, plaintiffs submitted the Acquisition Agreement as an exhibit to the counterclaim complaint (Doc. 135-1), and this Court now can consider this document in its Rule 12(b)(6) analysis. *See Horsley,* 304 F.3d at 1134; *Day,* 400 F.3d at 1276; *La Grasta,* 358 F.3d at 845; Fed.R.Civ.P. 10(c).

cannot breach where there was no contractual duty to perform the omitted conduct in the first place.").

The Acquisition Agreement is the only contract pled, and the only contract alleged to give rise to performance Columbia claims it was entitled in exchange for the conveyance of its oil and gas interests to Parkland. (Doc. 121, at ¶¶ 12, 14, 15, 29 & 35.) Because neither Plaintiff was a party to, or had any obligations under, the Acquisition Agreement, Columbia's claim for the breach of that contract is not plausible and is due to be dismissed – "There being no valid contract, there can be no action for breach of contract." *Southland Bank v. A&A Drywall Supply Co., Inc.,* 21 So.3d 1196, 1209 (Ala. 2008); *see also Bowman v. City of Gadsden,* ---So.3d---, 2016 WL 4585731, *4 (Ala. Sept. 2, 2016) ("An essential element of a breach-of-contract claim is the existence of a valid contract binding the parties." (internal quotation marks and citations omitted)); *Bradley v. Bauldree,* 101 So.3d 221, 227 (Ala.Civ.App. 2012) ("In a suit upon a contract for damages for its breach, there can be no recovery except in pursuance of its terms." (internal quotation marks and citation omitted)).

In addition, since defendants only sought, and the Court only granted, leave to assert a counterclaim premised upon the alleged breach of the 2010 Acquisition Agreement,[2] the merger clause in the Acquisition Agreement, as well as the parole evidence rule, foreclose any attempt to now claim the existence of another contract or agreement "relating to the subject matter" of Columbia's conveyance of mineral interests to Parkland (*see* Doc. 135-1, at 13 § 7.8). "Merger clauses operate to establish that a written agreement is a completely integrated document into which all previous

---

[2] *See Best Canvas, supra,* 713 F.2d at 621; *SunAmerica Corp. v. Sun Life Assurance Co. of Canada,* 77 F.3d 1325, 1331 (11th Cir.), *cert. denied,* 519 U.S. 822, 117 S.Ct. 79, 136 L.Ed.2d 37 (1996); *Abrams v. Ciba Specialty Chems. Corp.,* 663 F.Supp.2d 1243, 1249 n.14 (S.D. Ala. 2009).

and contemporaneous negotiations are merged. Merger clauses are enforceable under state contract law and have been given effect in Alabama for years." *Feil v. Wittern Group, Inc.,* 784 So.2d 302, 309 (Ala.Civ.App. 2000) (citations omitted).  "[I]f a written contract exists, the rights of the parties are controlled by that contract and parole evidence is not admissible to contradict, vary, add to, or subtract from its terms." *Marriott Int'l, Inc. v. deCelle,* 722 So.2d 760, 762 (Ala. 1998) (citation omitted). The parole evidence "rule provides, generally, that when the parties reduce a contract to writing, intended to be a complete contract regarding the subject covered by that contract, no extrinsic evidence of prior or contemporaneous agreements will be admissible to change, alter or contradict such writing." *Colafrancesco v. Crown Pontiac-GMC, Inc.,* 485 So.2d 1131, 1133 (Ala. 1986) (citation omitted). By operation of the merger clause and the parol evidence rule, Columbia is precluded from claiming that it was entitled to any consideration in exchange for the conveyance of its mineral interests other than that stated in the Acquisition Agreement, and the only party who could have failed to tender that consideration was Parkland (*see* Doc. 135-1). Moreover, Columbia alleged no facts to show the existence of any contract with either plaintiff, or to otherwise state a plausible breach-of-contract claim based upon any contract other than the Acquisition Agreement. *See Sweetwater Investors, LLC v. Sweetwater Apartments Loan LLC,* 2010 WL 4904673, *3 (M.D. Ala. Nov. 24, 2010) ("[A] claim cannot be inferred, or a complaint amended, through an argument in a brief."); *King v. Bank of America Corp.,* 2015 WL 1976427, *2 n.4 (M.D. Ga. April 30, 2015) ("A plaintiff may not amend his complaint via a response to a motion.").

The Court finds that there can be no plausible breach-of-contract counterclaim, because there is no longer a factual dispute that the plaintiffs are not parties to, or obligated by, the only contract alleged to gives rise to the obligations Columbia claims

were breached – the 2010 Acquisition Agreement. Therefore, the undersigned recommends that count two be dismissed with prejudice.

### B.     Conversion

"'Alabama law defines conversion as the exercise of dominion of another over *personal property* to the exclusion of or in defiance of the owner's right.'" *Pantry, Inc. v. Mosley,* 126 So.3d 152, 162 (Ala. 2013) (citation omitted).  "An action for conversion will not lie for the taking of real property[.]" *Baxter v. SouthTrust Bank of Dothan,* 584 So.2d 801, 805 (Ala. 1991) (citation omitted); *see also Gadsden Indus. Park, LLC v. CMC, Inc.,* 2016 WL 4158138, *1 (N.D. Ala. Aug. 5, 2016) (same); *Garrett v. Valley Sand & Gravel, Inc.,* 800 So.2d 600, 601 (Ala.Civ.App. 2000).

As defendants represented, count three of the counterclaim complaint is based upon the contention that plaintiffs "converted Defendant Columbia's interests in the oil wells." (Doc. 114, at 15; *see also* Doc. 121, at ¶ 38.) The Court granted leave to add this conversion claim because "the issue of whether oil and gas interests are subject to a conversion claim ha[d] not been adequately briefed." (Doc. 118, at 13-14.) In moving for the dismissal of the conversion claim, plaintiffs presented controlling authority (*see* Doc. 136, at 15 & 19-20) establishing that under Alabama law an "oil and gas lease is real property." *Allied Prods. Corp. v. Trinidad Petroleum Corp.,* 570 F.Supp. 1353, 1354 (N.D. Ala. 1983), citing *Nelson v. Teal,* 301 So.2d 51, 52 (Ala. 1974). "Since early times, courts have held that ownership of property consists of a bundle of rights; every distinct portion of that bundle may be severed and conveyed away at the will of the owner. Thus, the owner of a parcel of land has rights to the resources contained on, within, and underneath, that parcel." *NCNB Texas Nat'l Bank, N.A. v. West,* 631 So.2d 212, 223 (Ala. 1993). Consequently, oil and "gas contained within a property is a distinct interest in land subject to separate ownership and severable from other interests." *Id.*

16

In addition to the issue having been fully briefed, the Court now also has the benefit of the Acquisition Agreement through which Columbia conveyed oil and gas interests to Parkland. In pertinent part, the Acquisition Agreement states:

> Effective Conveyance of Property Interest. Upon due execution and delivery by Working Interest Owner of the Conveyance, (i) the Conveyance will constitute the legal, valid and binding conveyance of the Subject Interests, and (ii) the Subject Interests will constitute an interest in real property under the laws of the State of Alabama.

(Doc. 135-1, at 5 § 3.1(f)). *See* Fed.R.Civ.P. 10(c); *Griffin Indus., supra,* 496 F.3d at 1206 ("[W]hen the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern."); *Pennsylvania Fire Ins. Co. v. Malone,* 115 So. 156, 162 (Ala. 1928) ("[T]he rule of the contract is the law of the case.").

As a matter of law, and Columbia's contract, the allegedly converted oil and gas interests are real property that cannot serve as the subject matter of a plausible conversion claim. The counterclaim complaint presents no well-pleaded facts to show the taking of *personal property*, and therefore Columbia has failed to state a conversion claim upon which relief can be granted. *Baxter,* 584 So.2d at 805.

Additionally, "'[t]he gist of the action is the *wrongful* exercise of dominion over property in exclusion or defiance of a plaintiff's rights, where said plaintiff has general or special title to the property or the immediate right to possession.'" *Baxter,* 584 So.2d at 805, quoting *Ott v. Fox,* 362 So.2d 836 (Ala. 1978). By Columbia's own judicial admission, "Columbia transferred these mineral interests to Parkland." (Doc. 121, at ¶ 15.) Specifically, "Parkland acquired 75% of the oil and gas interests in Alabama that *had belonged* to Columbia Petroleum as part of the Acquisition Agreement in May, 2010." (*Id.*, at ¶14 (emphasis added).) Therefore, Columbia has no title or immediate right to possess the previously transferred mineral interests, and no claim for conversion would be cognizable even if mineral interests were not real property incapable of being

converted. *See Baxter,* 584 So.2d at 805; *Garrett,* 800 So.2d at 601. "'To sustain an allegation of conversion in Alabama the Plaintiff must be able to show legal title and the immediate right of possession to the property in question[.]'" *Ligon Furniture Co., Inc. v. O.M. Hughes Ins., Inc.,* 551 So.2d 283, 285 (Ala. 1989), quoting *Thompson v. Ford Motor Credit Co.,* 550 F.2d 256, 258 (5th Cir. 1977). Here, Columbia "relinquished any right that it had to immediate possession of the property when it agreed to [convey the mineral interests to Parkland] in accordance with the agreement hereinbefore set out." *Id.*

Further precluding the conversion claim from presenting a plausible claim to relief, Parkland was the entity to whom title was conveyed and the only entity alleged to, or who could plausibly, have exercised dominion over the mineral interests that are the subject matter of the conversion claim. (*See* Doc. 121, at ¶¶ 14-15; Doc. 135-1, at § 4.1(b).) Parkland was likewise the only entity obligated to tender to Columbia the consideration it claims it was due in exchange for the conveyance of its mineral interests – the breach of which is the act alleged to constitute the conversion. (Doc. 121, at ¶¶ 18, 20 & 38.)

Lastly, through its count for conversion, Columbia impermissibly "is attempting to convert [its] breach of contract claim into [a] separate tort claim[]." *Hood v. Liberty Ins. Corp.,* 2013 WL 3894958, *4 (S.D. Ala. July 29, 2013). It is clear that Columbia's conversion claim is based upon its contention that it did not receive the benefit of its bargain under its Acquisition Agreement with Parkland – Plaintiffs "converted Columbia's interests illegally and without consideration." (Doc. 121, at ¶ 38; *see id.* at ¶¶ 20 & 29.) However, Columbia's affirmative averments establish that "Columbia transferred these mineral interests to Parkland" pursuant to the Acquisition Agreement, and any consideration to which Columbia was due arose under that Agreement. (Doc. 121, at ¶¶ 14, 15 & 29.) Therefore, no tort claim for conversion would lie, even had

18

either plaintiff been a party to the Acquisition Agreement. "A mere failure to perform a contract obligation is not a tort, and it furnishes no foundation for an action on the case." *C&C Products, Inc. v. Premiere Industrial Corp.*, 275 So.2d 124, 130 (Ala. 1972) (citations omitted). Tort recovery is simply "unavailable to the victim of a business transaction which merely goes sour." *Dembitsky v. Gamble,* 480 So.2d 1219, 1222 (Ala. 1985). Columbia's conversion claim "falls flat at the outset because if there was any duty owed by the defendant to the plaintiffs, it would be a contractual duty, not a duty sounding in tort." *Marshall v. Bankston Motor Homes, Inc.,* 2013 WL 541316, *9 (N.D. Ala. Feb. 8, 2013); *see also Eastern Shore Marine, Inc. v. M/V Mistress,* 717 F.Supp. 790, 792 (S.D. Ala. 1989) ("If a cause of action arises from a breach of a promise, the action is *ex contractu*[.]"); *Armstrong Business Servs., Inc. v. AmSouth Bank,* 817 So.2d 665, 681 & 682 (Ala. 2001) ("Alabama law is long settled that a breach of a promise…does not support a tort cause of action[.] . . . '[A] mere failure to perform a contractual obligation is not a tort, and it furnishes no foundation for an action on the case.'"); *Burnett v. National Stonehenge Corp.*, 694 So.2d 1276, 1279-80 (Ala. 1997) ("Stonehenge's claims presented in these actions are essentially claims for enforcement for the rights Stonehenge derived from the contractual relationship it had with the Insurance Department. We conclude that Stonehenge's claims are *ex contractu*[.]").

C.     **Statute of Frauds**

The operation of the Statute of Frauds is a legal determination that turns upon whether the subject of the alleged agreement falls within the Statute and, if so, has the plaintiff sufficiently averred a written agreement that complies with the requirements of the Statute. *See Southland Bank, supra,* 21 So.3d at 1203-04; *Holman v. Childersburg Bancorporation, Inc.,* 852 So.2d 691, 694-97 (Ala. 2002). Therefore, "a Statute of Frauds defense may be raised in a motion to dismiss[.]" *Adams v. Tractor & Equip. Co., Inc.,* 180

So.3d 860, 868 (Ala. 2015); *see also Branch Banking & Trust Co. v. Gooden Homes, Inc.,* 2011 WL 1257213, *2 (S.D. Ala. April 4, 2011) (granting Rule 12(b)(6) dismissal of counterclaims because "[n]one of the counterclaims asserted states a claim for relief because each relies on…a type of agreement barred by Alabama's statute of frauds.").

As previously determined, oil, gas and other mineral interests are real property under Alabama law. *See, e.g., Nelson v. Teal, supra,* 301 So.2d at 52; *Alabama Dep't of Transp. v. Land Energy, Ltd.,* 886 So.2d 787, 790 (Ala. 2004). These interests are severable estates constituting interests in real property within the scope of § 8-9-2(5), which can only be reserved or conveyed by deed, lease or other written agreement that satisfies all requirements of the Statute of Frauds. By operation of Alabama's Statute of Frauds, to be enforceable, contracts "for the sale of lands, tenements or hereditaments, or of any interest therein" must be "in writing and subscribed by the party charged therewith." Ala.Code § 8-9-2(5) (1975). The Statute of Frauds "requires that all contracts for the sale of real property [or any interest therein] be in writing and be signed by the party against whom the contract is asserted. The writing must also contain a recital of the consideration supporting the contract." *Pickard v. Turner,* 592 So.2d 1016, 1020 (Ala. 1992) (citation omitted); *see also Branch Banking & Trust Co. v. Nichols,* 184 So.3d 337, 345 (Ala. 2015).

The requirements of the Statute of Frauds apply equally to an alleged agreement requiring Parkland to purchase Columbia's residuary interests as additional consideration for consummation of the Acquisition Agreement. *See Gewin v. TCF Asset Management Corp.,* 668 So.2d 523, 527 (Ala. 1995) ("Under the Alabama Statute of Frauds, an agreement for the sale of land is void unless the agreement is signed by the party to be charged with the agreement. That requirement also extends to modifications of an existing contract."); *Charles J. Arndt, Inc. v. City of Birmingham,* 547 So.2d 397, 401

20

(Ala. 1989) ("[A]ny contract required by the Statute of Frauds to be in writing cannot be modified by subsequent oral agreement. . . . In other words, any modification of such a contract would have to be in writing *and* signed by the party to be charged therewith.").

Any contention that plaintiffs could somehow be liable for Parkland's alleged failure to perform its obligations under the Acquisition Agreement or any alleged amendment requiring it to purchase Columbia's residuary interests would likewise be subject to § 8-9-2(3) of the Statute of Frauds because "[e]very special promise to answer for the debt, default or miscarriage of another" is also "void unless such agreement…is in writing and subscribed by the party to be charged therewith." Ala.Code § 8-9-2(3); *see Page v. Gulf Coast Motors,* 903 So.2d 148, 151 (Ala. Civ. App. 2004) ("A promise to pay the debt of another is barred by the Statute of Frauds unless it is in writing.").

Columbia's allegation of "a *defacto* joint venture between Columbia and Parkland and Univalor" is legally insufficient to avoid the Statute of Frauds. (Doc. 121, at ¶ 14.) The Statute of Frauds "includes oral agreements to form partnerships or to enter joint ventures calling for the conveyance of real estate." *Hunte v. Blake,* 476 So.2d 75, 77 (Ala. 1985) (citations omitted). "There is no such thing as a simulated relation for some purpose which depends upon an actuality to accomplish that purpose. The object of [the Statute of Frauds] would always be evaded if it could be done in such a simple and unsubstantial manner." *Wachter v. Leeth Nat'l Bank*, 200 So. 422, 424 (Ala. 1941). Even if Columbia averred that it was a third party, instead of a participant, its alleged "*de facto* joint venture" involving the conveyance of interests in real property would still not be plausible. *See Charles J. Arndt, Inc., supra,* 547 So.2d at 401-02 ("While we have noted…that a joint venture may be implied as to third parties…this general rule must give way to the Statute of Frauds when the subject of the contract or debt involves the

purchase of real property or an interest therein. . . . [T]he theory of implied or apparent authority is not applicable to a situation within the Statute of Frauds.").

"With the Statute of Frauds, the legislature identified defined categories of oral promises that are especially subject to fabrication and especially unworthy of reliance or enforcement. Oral promises for the sale of lands, tenements or hereditaments, or of any interest therein, . . . are inherently suspect, and the Statute of Frauds prohibits enforcement of such a promise even [if] both parties acknowledge the existence of the oral agreement." *Rentz v. Grant,* 934 So.2d 368, 373 (Ala. 2006) (internal quotation marks and citations omitted).  A "'primary purpose of the Statute [of Frauds] is...to prevent the enforcement through fraud or perjury of contracts never in fact made.'" *Fausak's Tire Center, Inc. v. Blanchard,* 959 So.2d 1132, 1139 (Ala.Civ.App. 2006), quoting *Restatement (2d) of Contracts* § 131, Comment c. (1981).

"In order to establish a breach of contract, the plaintiffs were required to prove, among other things, the existence of a valid contract." *Southland Bank,* 21 So.3d at 1203 (citation omitted). When the agreement alleged "violates the Statute of Frauds...the agreement is void and there is no valid contract upon which to base a breach-of-contract claim." *Id.* at 1204. The only contract alleged in the counterclaim complaint is the Acquisition Agreement. (Doc. 121, at ¶¶ 12 & 35; Doc. 114, at 15; Doc. 118, at 12-13.) "Columbia agrees that neither Plaintiff is a signatory to the Acquisition Agreement and that the Agreement lists no specific obligations for either of them." (Doc. 140, at 3 n.1.) Therefore, Columbia's counterclaim "fails to state a claim for breach of contract because it requires the existence of an underlying contract and the statute of frauds destroys the only alleged contract[.]" *Branch Banking & Trust Co. v. EBR Investments LLC,* 2015 WL 225457, *2 (N.D. Ala. Jan. 16, 2015); *see* Ala.Code § 8-9-2 (3) & (5).

As explained by the United States District Court for the Northern District of Georgia, "[t]he United States Supreme Court has dispensed with the rule that a complaint may only be dismissed under Rule 12(b)(6) when '"it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."' . . . The Supreme Court has replaced that rule with the 'plausibility standard,' which requires that factual allegations 'raise the right to relief above the speculative level.'" *Vie v. Wachovia Bank, N.A.*, 2012 WL 1156387, *2 (N.D. Ga. April 6, 2012). "In the present case, any agreement…falls squarely within the statute of frauds. Because Plaintiff has failed to make a plausible showing that a valid written [contract] existed between the parties, Plaintiff's claim for breach of contract is **DISMISSED**." *Id.* at *4.

Alabama law further dictates that where the Statute of Frauds precludes liability in contract, recovery through a tort claim is equally prohibited. "[W]here, as here, an element of a tort claim turns on the existence of an alleged agreement that cannot, consistent with the Statute of Frauds, be proved to support a breach-of-contract claim, the Statute of Frauds also bars proof of that agreement to support a tort claim." *Holman v. Childersburg Bancorporation, Inc.*, 852 So.2d 691, 701 (Ala. 2002). "Were the rule otherwise, the Statute of Frauds could be effectively avoided by the simple wording of the complaint." *Id.* Because the Statute of Frauds bars Columbia's "breach-of-contract claims, the tort claim[] also fail[s] as a matter of law." *Id.* at 702. Allowing recovery in tort for damages barred in contract is expressly prohibited because it "defies the policy and frustrates the efficacy of the Statute of Frauds." *Bruce v. Cole*, 854 So.2d 47, 58 (Ala. 2003). Therefore, "it is a 'well accepted doctrine that one cannot circumvent the Statue of Frauds by bringing an action in tort, when the tort action is based primarily on the

unenforceable contract[.]'" *Nichols,* 184 So.3d at 346-47 (citation omitted); *see also Hurst v. Cook,* 981 So.2d 1143, 1156 (Ala. Civ.App. 2007).

There is no written agreement signed by either plaintiff through which they incurred any obligations to provide Columbia with any consideration for its conveyance of the subject mineral interests to Parkland, or through which plaintiffs assumed any liability for Parkland's failure to perform the obligations it owed to Columbia pursuant to the Acquisition Agreement. (Doc. 140, at 3 n.1; Doc. 135-1, at 1 & 14.) Therefore, Columbia's attempt to impose liability on plaintiffs for the alleged performance it claims it was due in exchange for the conveyance of these mineral interests does not state a plausible claim for relief as a matter of law. *See* Ala.Code § 8-9-2(3) & (5).

## V.   Conclusion

Based on the foregoing, the undersigned **RECOMMENDS** that plaintiffs' motion to dismiss counts two (breach-of-contract) and three (conversion) of defendants' permissive counterclaim complaint (Doc. 135) be **GRANTED**, and that those claims be dismissed with prejudice.

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(b); S.D.ALA. L.R. 72.4. The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based

24

on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this the 20th day of December, 2016.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**

25