**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| **UNIVALOR TRUST, SA and FORVEST FINANCIAL SERVICES CORP.,** )<br>)<br>) | |
| **Plaintiffs,** ) | |
| ) | |
| **v.** ) | **CIVIL ACTION NO. 1:15-00414-KD-C** |
| ) | |
| **COLUMBIA PETROLEUM LLC,** )<br>**COLUMBIA INTERNATIONAL LLC,** )<br>**ALABAMA ENERGY HOLDINGS II LLC,** )<br>**BENJAMIN ENERGY HOLDINGS II LLC,** )<br>**OCCIDENTAL ENERGY PARTNERS,** )<br>**INC., and CHESTER F. ENGLISH III,** ) | |
| ) | |
| **Defendants/Counter-Claimants,** ) | |
| ) | |
| **v.** ) | |
| ) | |
| **UNIVALOR TRUST, SA and FORVEST FINANCIAL SERVICES CORP.,** )<br>)<br>) | |
| **Plaintiffs/Counter-Defendants,** ) | |
| ) | |
| **PRUET PRODUCTION, CO.,** ) | |
| ) | |
| **Intervenor,** ) | |
| ) | |
| **BRADLEY ENERGY HOLDINGS II, LLC.,** )<br>) | |
| ) | |
| **Intervenor Defendant.** ) | |

## <u>ORDER</u>

This action is before the Court on Defendants Columbia Petroleum, LLC, Columbia

International, LLC, Alabama Energy Holdings II, LLC, Benjamin Energy Holdings II, LLC,

Occidental Energy Partners, Inc., and Chester F. English III's motion for summary judgment,

memorandum and exhibits in support and reply (docs. 159, 160, 182) and the response filed by

Plaintiffs Univalor Trust SA and Forvest Financial Services Corporation (doc. 181); and Plaintiffs' motion for summary judgment, memorandum and exhibits in support and reply (docs. 161, 165, 184) and the Defendants' response (doc. 178).

Upon consideration, the motions are GRANTED in part, and DENIED in part, as set forth herein. Specifically, Plaintiffs' motion for summary judgment on the issue of assent is GRANTED as to Defendants Chester English III, Alabama Energy, and Benjamin Energy, but otherwise DENIED as to the remaining Defendants; Defendants' motion for summary judgment on the issue of contract formation is DENIED; Defendants' motion for summary judgment seeking judgment as a matter of law that the Settlement Agreement is void for violation of the Statute of Frauds is DENIED; Defendants' motion for summary judgment seeking judgment as a matter of law that the Settlement Agreement is void for illegality is DENIED; and Plaintiffs' motion for summary judgment as to the Defendants' counterclaim for tortious interference with a business relation is GRANTED.

I. Procedural and Factual Background

This case involves a dispute as to whether a written Settlement Agreement, circulated to the parties and signed in triplicate by at least some of the parties on November 13, 14 and 17, 2014, was the final valid and binding settlement of the parties' claims.

In the Fourth Amended Complaint, Plaintiffs assert that the parties entered into a binding Settlement Agreement and request the "Court enter an Order declaring that Defendants entered into a valid binding settlement agreement with Plaintiffs that was not invalidated by Defendants' attempt at repudiation or rescission" *i.e.,* the cancellation of the assignments and alleged refusal to sign corrected assignments (Count One) (doc. 91, p. 13). Plaintiffs also seek an Order for the "Defendants to immediately comply with all terms of the settlement agreement" and

alternatively, "Plaintiffs demand judgment for breach of contract, holding Defendants separately and severally liable for the value of the settlement agreement, which is $2,500,000.00 plus interest and costs" (Count Two) (doc. 91, p. 16).

Defendants answered the Fourth Amended Complaint and denied the existence of a final and binding Settlement Agreement. Defendants also set forth three counterclaims, one of which – tortious interference with a business relation – survived the Plaintiffs' motion to dismiss (doc. 121).

II.  Conclusions of Law

A. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a).  "Cross-motions for summary judgment will not, in themselves, warrant the court in granting summary judgment unless one of the parties is entitled to judgment as a matter of law on facts that are not genuinely disputed.... Nonetheless, cross-motions may be probative of the non-existence of a factual dispute when, as here, they demonstrate a basic agreement concerning what legal theories and material facts are dispositive." *United States v. Oakley*, 744 F.2d 1553, 1555–56 (11th Cir. 1984) (citing *Bricklayers Int'l Union, Local 15 v. Stuart Plastering Co.*, 512 F.2d 1017 (5th Cir.1975)).

The party moving for summary judgment bears the "initial responsibility of informing the district court of the basis for [their] motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which [they] believe[] demonstrate the absence of a genuine issue of material fact." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir. 1991) (bracketed text added) (quoting

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). If the moving party does not have the burden of proof at trial, such as the Defendants and Plaintiffs as Counterclaim Defendants, they may show that "there is an *absence* of evidence to support the nonmoving party's case." *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1438 (11th Cir. 1991) (citations omitted) (emphasis added). Alternatively, the moving party may support the "motion for summary judgment with *affirmative* evidence demonstrating that the nonmoving party will be unable to prove its case at trial." *Id.* (emphasis added). "If the moving party shows the absence of a triable issue of fact by either method, the burden on summary judgment shifts to the nonmoving party, who must show that a genuine issue remains for trial." *Id.* "If the nonmoving party fails to 'make a sufficient showing on an essential element of her case with respect to which she has the burden of proof,' . . . the moving party is entitled to summary judgment." *Id.* (citations omitted).

"[W]hen the *moving* party has the burden of proof at trial" *i.e.,* Plaintiffs (Defendants did not move for summary judgment as to their Counterclaim), "that party must show *affirmatively* the absence of a genuine issue of material fact: it must support its motion with credible evidence ... that would entitle it to a directed verdict if not controverted at trial. In other words, the moving party must show that, on all the essential elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the non-moving party." *Id.* at 1438 (citations and internal quotation marks omitted; emphasis in original); *Goolsby v. Gain Technologies, Inc.*, 362 Fed. Appx. 123, 136 (11th Cir. 2010) ("For a plaintiff to succeed on a summary judgment motion, he 'must demonstrate that on all essential elements of [his] case on which [he] bears the burden of proof at trial, [that] no reasonable jury could find for the non-moving party.'") (bracketed text in original) (quoting *Irby v. Bittick*, 44 F.3d 949, 953 (11th Cir.1995)) (internal quotations omitted). If the movants "make[] such an affirmative showing, [they are] entitled to

summary judgment unless the non-moving party" comes "forward with significant, probative evidence demonstrating the existence of a triable issue of fact." *Id.* (citations omitted).

Overall, as to each motion for summary judgment, the Court must "resolve all issues of material fact in favor of the [non-movant], and then determine the legal question of whether the [movant] is entitled to judgment as a matter of law under that version of the facts." *McDowell v. Brown*, 392 F.3d 1283, 1288 (11th Cir. 2004) citing *Durruthy v. Pastor*, 351 F.3d 1080, 1084 (11th Cir. 2003). "[A]ll reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant." *Citizens Trust Bank v. Lett*, 2015 WL 4254561, at *1 (N.D.Ala. 2015). The Court is obligated to construe the record, including all evidence and factual inferences, in the light most favorable to the nonmoving party. *See Skop v. City of Atlanta,* 485 F.3d 1130, 1136 (11th Cir. 2007).

However, the mere existence of any factual dispute will not automatically necessitate denial of a motion for summary judgment; rather, only factual disputes that are material preclude entry of summary judgment. *Lofton v. Secretary of Dept. of Children and Family Services*, 358 F.3d 804, 809 (11th Cir. 2004). "An issue of fact is material if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case. It is genuine if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Reeves v. C.H. Robinson Worldwide, Inc.*, 594 F.3d 798, 807 (11th Cir. 2010) (citation omitted). Also, "what is considered to be 'facts' at the summary judgment stage may not turn out to be the actual facts if the case goes to trial, but those are the facts at this stage of the proceeding for summary judgment purposes." *Cottrell v. Caldwell*, 85 F.3d 1480, 1486 (11th Cir. 1996).

B. Analysis

1. Jurisdiction and Choice of Law

As an initial consideration, this Court exercises diversity jurisdiction over this matter. Therefore, the Court applies the choice of law principles of Alabama, the forum state. *Klaxon Co. v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 496 (1941); *St. Paul Fire and Marine Ins. Co. v. ERA Oxford Realty Co. Greystone, LLC*, 572 F.3d 893, 895 n.1 (11th Cir. 2009) (citation omitted). For contract disputes, Alabama applies the law of the state where the contract was formed unless the contract contains a provision specifying which law governs. *Cherokee Ins. Co. v. Sanches*, 975 So.2d 287, 292 (Ala. 2007).

2. <u>Defendants' Claim for Tortious Interference with a Business Relationship</u>

In their Counterclaim for Tortious Interference, Defendants (as Counterclaim Plaintiffs) allege that Plaintiffs (as Counter Defendants) improperly contacted Pruet Production Company, the operator of oil and gas wells owned by Defendants Alabama Energy Holdings II, LLC, and Benjamin Energy Holdings II, LLC. Specifically, Defendants allege that Plaintiffs "falsely" represented to "Pruet that a settlement agreement had taken place" and that Defendants "had obligated themselves to place mineral interests in trust, causing Pruet to suspend royalty payments" (doc. 121, p. 18-19). Defendants allege that Plaintiffs were "strangers" to the business relationship with Pruet and their actions were "an intentional interference" with this business relationship. (Id.)[1]

Plaintiffs now move for summary judgment as to the Counterclaim (doc. 161, doc. 165,

---

[1]  After the Counterclaim was filed, Pruet was granted leave to intervene. Pruet filed a complaint in interpleader and interplead the disputed royalties. Subsequent thereto, Bradley Energy Holdings II, LLC intervened as a Defendant in the interpleader complaint to protect its interests in the interpleader funds. Bradley was not named as a Defendant in the Plaintiffs' Fourth Amended Complaint and was not a Counter-claimant in the Defendants' Counterclaim for tortious interference.

p. 21-24).  Plaintiffs argue that they are not strangers to the business relationship between Pruet

and Defendants. They argue that because they were parties to the Settlement Agreement, which

required the Defendants to assign the working interests to a Trust, they acted in good faith,

lawfully and with justification to protect their rights to the royalties from the working interests.

Plaintiffs point out that they had no ability to prevent Pruet from paying the royalty payments to

Defendants, and that they did not act tortuously or unlawfully by informing Pruet of their claim.

Plaintiffs also argue that Defendants cannot establish that they have been damaged because Pruet

has interpled all of the disputed payments.[2]

Defendants respond that they have a protectable business relationship with Pruet, that

Plaintiffs were aware of that relationship, that Plaintiffs were strangers to the relationship, and

that they intentionally interfered and caused damages; specifically, Pruet's refusal to pay the

royalty payments to Defendants.  They argue that Plaintiffs' justification for interference – that

the royalties from the working interest would be security for the settlement payments – is not

sufficient because the security was cancelled, *i.e*, the assignments were cancelled.

"In Alabama, a claim for tortious interference with contractual or business relations

requires proof of five elements: (1) the existence of an enforceable contract or protectable

business relationship; (2) the defendant's knowledge of the contract or business relationship; (3)

that the defendant was a stranger to the contract or business relationship; (4) the defendant's

intentional interference with the contract or business relationship; and (5) damage to the

---

[2] Plaintiffs also point out that Defendants did not oppose Pruet's motion to intervene, but instead "judicially admitted" that interpleading the funds "caused no prejudice to any party, and is exactly the type of situation Rule 22 envisions to allow the Court to determine the competing claims" (doc. 165, p. 24).  Defendants respond that they only conceded that no prejudice would attach because of the late filing of Pruet's motion to intervene (doc. 178, p. 24).

plaintiff." *Fuel-From-Waste, LLC v. Gold Coast Commodities, Inc.,* 2017 WL 75754, at *4 (N.D. Ala., Jan. 9, 2017) (citations omitted). "Under Alabama law, mere interference with contract rights is not actionable, interference must be wrongful, malicious, unlawful, or unjustified." *Bond v. Trim-Line, Inc*., 465 So.2d 365, 367 (Ala. 1985).

Also "[t]he party asserting the tortious interference claim bears the burden of establishing that the party defending the claim 'is a "third party" or "stranger" to the contract or business relationship with which the defendant allegedly interfered.'" *Parsons & Whittemore Enterprises Corp. v. Cello Energy, LLC,* 613 F.Supp.2d 1271, 1281–85 (S.D.Ala.2009) (quoting *Waddell & Reed, Inc. v. United Investors Life Ins. Co.,* 875 So.2d 1143, 1154 (Ala. 2003)). The decision whether a defendant is a "stranger" to a business contract or relationship is a matter of law for the Court to determine. *Waddell & Reed, Inc.,* 875 So.2d at 1159; *Wildfire Group, LLC v. Prime Insurance Company*, 2015 WL 10015378, at *11-12 (M.D. Ala., Sept. 22. 2015) (same). The Supreme Court of Alabama explained in *Waddell & Reed* that a defendant need not be a party to the contract or a primary actor in the business relationship to effectively be a party, but that "[a] defendant is a party in interest to a relationship if the defendant has any beneficial or economic interest in, or control over, that relationship." 875 So.2d at 1154. Additionally, "[O]ne is not a stranger to a contract just because he is not a party to the contract. A tortious interference claim requires, among other things, wrongful conduct by the defendant without privilege; 'privilege' means legitimate economic interests of the defendant or a legitimate relationship of the defendant to the contract, so that he is not considered a stranger, interloper, or meddler." 875 So.2d at 1157.

Viewing all the evidence and factual inferences in the light most favorable to the non-movant Defendants, the Court finds that there is no dispute that Pruet held the working interest

that were assigned to the Univalor Trust as part of the contested Settlement Agreement between Plaintiffs and Defendants. There is no dispute that but for the incorrect identification of the Univalor Trust as the Parkland Trust, the assignments would have been complete and not subject to cancellation for an improper identification. Thus, while the parties dispute the existence of the Settlement Agreement, Plaintiffs did not act unlawfully by informing Pruet of their claim to the royalty payments, *i.e.*, their economic interest in the business relationship.

Defendants assert that the "Pruet Points were only security and other security could have been provided" (doc. 178, p. 20). That may be true, but the undisputed facts show that at the time Plaintiffs contacted Pruet, the "Pruet Points" were the only security that had been provided, albeit ineffectively, for payment of the $2.5 million as part of the Settlement Agreement and release. Thus, plaintiffs had a legitimate economic interest it was attempting to protect.

Accordingly, the Court finds as a matter of law that Plaintiffs are not strangers to the business relationship between Pruet and Defendants, and summary judgment is GRANTED in favor of Plaintiffs as to this claim. *Waddell & Reed, Inc.,* 875 So.2d at 1159 (whether a defendant is a "stranger" to a relationship is a matter of law); *Wildfire Group, LLC*, 2015 WL 10015378, at *11-12 (same).

### 3. Defendants Claim that the Contract is Void for Illegality

Defendants argue that the Settlement Agreement is void for illegality under the public policy of the State of Alabama – that contracts based upon illegal activity or for an illegal purpose are void. Defendants premise their argument on the fact that Judy Hamilton[3] is a Canadian attorney who is not licensed to practice law in Alabama. Defendants point out that,

---

[3] Defendants also assert that "fellow Canadian solicitor Bill Friedman" illegally practiced law in Alabama. Friedman was the senior partner of the firm where Hamilton practiced.

pursuant to Ala. Code § 34-3-6, persons engaged to practice law in Alabama must have an Alabama license to practice. However, because Hamilton is not a "citizen of the United States" or "legally present in the United States with appropriate documentation from the federal government" she cannot be licensed to practice law in Alabama. Defendants argue that even though Hamilton was not present in the state, she committed the crime of illegal practice of law within Alabama because of the work she performed for Plaintiffs Univalor,[4] a Swiss entity, and Forvest, a Canadian entity, during the settlement negotiations. Defendants also assert that Plaintiffs are guilty of a crime – conspiracy or aiding and abetting the unauthorized practice of law - by hiring Hamilton and her Canadian law firm to negotiate the settlement in Alabama. Thus, Defendants argue that the contract between Plaintiffs and Hamilton is illegal, void and unenforceable as against the public policy of Alabama.

Defendants also argue that Hamilton's conduct, *i.e.*, her practice of law, and her testimony, is the evidence in support of Plaintiffs' claims and that Plaintiffs cannot rely on this evidence because it is the fruit of Hamilton's unauthorized practice of law. Therefore, Defendants' assert that Plaintiffs' claims are without evidentiary support and due to be dismissed as a matter of law. Defendants also argue that if Plaintiffs could successfully assert that the Settlement Agreement was not intertwined with Hamilton's illegal practice of law, Hamilton is disqualified from acting as Plaintiffs' agent because her representation is void under Alabama

_____

[4] The motion is not clear as to whether Defendants argue that Plaintiff Forvest is also guilty of the crime. Defendants state that Hamilton and her firm represented Univalor and Forvest and refer to them "collectively" as the "Univalor Entities" (doc. 160, p. 4-5). But Defendants did not identify the "Univalor Entities" as Hamilton's co-conspirator or aider and abettor, but rather only "Univalor" (doc. 160, p. 22-28). However, Hamilton appears to represent the interests of both Forvest and Univalor, since the disputed Settlement Agreement was signed by a representative of Forvest and Univalor (doc. 91-1, p. 14). Thus, the Court will use Plaintiffs in the plural.

law. As a result, Hamilton did not have legal authority or capacity to make or accept offers for Plaintiffs and did not have written agency to satisfy the Alabama Statute of Frauds. Therefore, Defendants assert that Plaintiffs never legally accepted the Settlement Agreement, and thus, there is no valid Agreement for this Court to enforce.

Plaintiffs respond that Hamilton's representation of foreign corporations to settle claims related to the Canadian litigation does not constitute the unauthorized practice of law in Alabama. Plaintiffs also point out that the Settlement Agreement negotiations were intended to settle liabilities among the parties resulting from litigation in Ontario, Canada. They also argue that neither Hamilton nor her client were present in Alabama, that Hamilton did not represent an Alabama resident, and did not participate in any proceedings in Alabama.

Defendants have not provided the Court with any Alabama State Bar decision, ethics opinion, or an Alabama court decision finding that a foreign attorney has engaged in the unauthorized practice of law by negotiating a settlement agreement with attorneys in Alabama while representing a foreign client to settle liabilities arising from foreign litigation.[5] In fact, the argument appears meritless. The settlement agreement was not negotiated "in Alabama" anymore than it was negotiated in Canada by an Alabama attorney who is, presumably, not licensed to practice in Canada. It appears the negotiation was via electronic communication, and more importantly was an effort to globally settle a Canadian lawsuit. In the circumstance

---

[5] Defendants cite to *Fogarty v. Parker, Poe, Adams and Bernstein, LLP*, 961 So. 2d 784 (Ala. 2006). However, that case involved litigation that was filed in the State of Alabama against attorneys from North Carolina who represented Alabama entities. Additionally, the Supreme Court of Alabama did not find that the attorneys engaged in the unauthorized practice of law. Instead the Court found that their motion to dismiss had been improperly granted because a private cause of action for the unauthorized practice law exists in Alabama. The Court stated: "We express no opinion on the merits of the case" and remanded the action for further proceedings consistent with the opinion.

presented here, the Court declines to accept Defendants' argument, because it without any legal support, that the Settlement Agreement is void for illegality based on Hamilton's alleged unauthorized practice of law. Accordingly, the Court finds that Defendants' motion for summary judgment seeking judgment as a matter of law that the Settlement Agreement is void for illegality is DENIED.[6]

### 4. Statute of Frauds

During the course of the negotiations, Defendants' counsel stated in an email that the Settlement Agreement was acceptable to his clients (doc. 165-13, Exh. 13). He also obtained the signature of Defendant English on a triplicate of the Agreement (doc. 181-60, Exh. 100). On motion for summary judgment, Defendants argue that under the Alabama Statute of Frauds, Ala. Code § 8-9-2(3), (5), (1975), their counsel needed authority in writing to accept the Settlement Agreement, that he did not have written authority, and therefore, he lacked authority to bind Defendants. Defendants argue that the Settlement Agreement comes under the Statute of Frauds because it requires Defendants to answer for the debt of another (Livingston Investments II, LLC) and requires Defendants to transfer an interest in land, *i.e.*, the working interests and the consequent right to receive the oil and gas royalty payments.

Plaintiffs respond that the Settlement Agreement is neither an agreement to answer for the debt of another nor a contract for the sale of land, but instead it is an agreement to resolve the claims and disputes among the parties to the Settlement Agreement. Plaintiffs point out that in the Settlement Agreement, they agreed to release all claims against Defendants and the non-party

---

[6] Defendants' objection to certain evidence as support for facts or information arising out of Hamilton's alleged unauthorized practice of law is overruled. (*See* Doc. 178, p. 27).

Fletcher Petroleum Corporation entities, including the claims related to the Ontario litigation, in exchange for payment of the settlement amount. Plaintiffs point out that assignments of the working interests in the oil and gas wells was the funding mechanism for the Trust, that the interests would revert[7] back to the Defendants when the settlement amount was paid. The interests were not to be transferred or conveyed to Plaintiffs, such that title would pass as in a sale, but instead assigned to a Trust.

Plaintiffs also respond that Defendant English is not a guarantor or surety of any debt of another, but instead his obligations under the Settlement Agreement are to perform in exchange for the release that he personally received. Plaintiffs assert that under Alabama law an original agreement, such as the Settlement Agreement which may have the *effect* of Defendant English's promising to pay the debt of another, does not fall within the Statute where the *obje*ct of the promise is to promote some purpose of Defendant English, *i.e.*, release from liability related to the Ontario litigation and other liabilities among the parties to the Settlement Agreement (doc. 181, p. 23, emphasis in original).

The Court has reviewed the Settlement Agreement, assuming for purpose of this issue that it is a valid contract, and finds that it is not a contract for the sale of an interest in real property as contemplated by the Statute. The parties entered into the Settlement Agreement not for the purpose of a sale of an interest in real property, but instead to settle claims and release

---

[7] Plaintiffs quote the following paragraphs from the Agreement: "The Trust Properties shall be held by the Trustee . . . to disburse to Univalor or its assignee all amounts paid to the Trust . . . until the Settlement Amount has been paid in full to Univalor, at which time the interests may revert back to the Persons who placed the Trust Properties into the Trust"; "At the end of the second cure period, or when Univalor has been paid $2.5 million USD in the aggregate from the Trust, the Trust will be dissolved and the Trust Properties will be distributed by the Trustee back to the original contributors" (doc. 165-1, at 7-8, ¶¶ 3, 6).

certain liabilities. As part of the consideration for the release of liability, the Settlement Agreement required Defendants to transfer oil and gas working interests into a Trust for the benefit of Plaintiffs, but the Agreement was not for the purchase of an interest in real property. *See Hess v. Market Inv. Co., LLC*, 917 So.2d 140, 144 (Ala. 2005) ("Because the oral contract was to convey to Hess an interest in Magnolia Place not as the result of his purchasing such an interest in a 'sale,' but as compensation for services Hess rendered to Herscu and 2011 Corporation, we hold that the contract falls outside of the Statute of Frauds and is not rendered unenforceable by virtue of it.").

The Court also finds that the Settlement Agreement is not within the Statute of Frauds because it is an original agreement, which may have the effect of a promise to pay the debts of another, but the object was to promote the settling of claims and liabilities among the parties and the forbearance of litigation. Defendant English is not guaranteeing the debt of another person or entity. *See Spafford v. Crescent Credit Corp.,* 497 So.2d 160, 161 (Ala.Civ.App. 1986) (finding that Spafford's agreement with Crescent was an original promise to pay under the lease-purchase agreement, rather than a guaranty of another's debt."). Accordingly, Defendants' motion for summary judgment seeking judgment as a matter of law that the Settlement Agreement is void for violation of the Statute of Frauds is DENIED.

5. The Cross-Motions for Summary Judgment

This case involves a complicated set of facts, which start from a loan in 2007 from Plaintiff Univalor to Livingston Investments II, LLC. Chester English, III, has or had various interests and/or relationships with Livingston Investments, and Defendants Columbia Petroleum, Columbia International, Alabama Energy, Benjamin Energy, and Occidental Energy. In May

2014, Plaintiffs, Defendants, and Rue Royal Minerals LLC, Fletcher Petroleum Corporation, and Rick Fletcher (Fletcher entities) began negotiating a settlement (doc. 160-3, emails among Plaintiffs' counsel, Defendants' counsel, and Fletcher entities). Stephen Stim, represented Defendants Columbia and Occidental (doc. 160-33), Judy Hamilton represented Plaintiffs, and William T. McGowin IV represented the Fletcher entities. In August 2014, John W. Sharbrough III, emailed counsel advising that he would serve as local counsel for Defendant English (doc. 160-6).

After prolonged negotiations to globally settle claims related partially to a Canadian lawsuit, Sharbrough emailed counsel for Univalor on October 29, 2014, that "the last draft of the settlement is acceptable to my client(s)" (doc. 165-13). Thereafter, counsel for Univalor pressed for a signed agreement and the Settlement Agreement was emailed to counsel. On November 13, 2014, counsel confirmed that the Fletcher entities had signed the Settlement Agreement (doc. 181-58). After indicating in two emails that he was seeking his client's signature on the Settlement Agreement, on November 14, 2014, Sharbrough sent an email to counsel for Univalor, which stated that "I have Chester's signature" (doc. 165-21). On November 17, 2014, Hamilton confirmed that Plaintiffs had executed the agreement (doc. 165-22).

The parties signed separate Settlement Agreements and each party retained their respective signature page. The Settlement Agreement[8] contains signature lines for all the named Defendants as well as Livingston Investments (docs. 165-1, 165-11). Defendant English signed on one line, which had his name (doc. 165-23, pp. 1-2) and then it appears he signed on behalf of Livingston Investments (doc. 165-23, p. 3). The remaining signature lines for Columbia

---

[8] Plaintiffs have submitted two versions of the Settlement Agreement. (Compare Doc. 165-1 to 165-11). The differences appear minor except for the deletion of two paragraphs.

International, Columbia Petroleum, Alabama Energy, Benjamin Energy and Occidental are blank (doc. 165-23). Counsel for Columbia and Occidental have now provided affidavits wherein they state that English did not have authority to sign the Settlement Agreement for Defendants Columbia and Occidental, that they did not sign, and also that they refuse to "provide their assent" to the Settlement Agreement (docs. 160-33; 34).

The Settlement Agreement provided that Defendants Benjamin Energy, Intervenor Defendant Bradley Energy Holdings II, LLC, and the Fletcher entities were to assign working interests in oil and gas wells to the Univalor Trust and royalties from the interests would pay Plaintiffs $2.5 million over time (doc. 165-1, p. 2, p. 6). In December 2014, Defendants and the Fletcher entities executed the Trust (doc. 181-63). Also, in December 2014, after Defendants obtained certain working interest points from the Fletcher entities (doc. 160-20), Defendant Alabama Energy, Defendant Benjamin Energy and Intervenor Defendant Bradley Energy, signed and recorded assignments of the working interests to the Trust (docs. 165-25 through 28).

However, the Trust was improperly identified as the Parkland Settlement Trust (instead of Univalor Trust) in the assignments. In February 2015, Alabama Energy, Benjamin Energy and Bradley Energy, acting through English, canceled the assignments, and refused to sign corrected assignments (doc. 165-25, Huckleberry Affidavit; doc. 51-3, Action to Quiet Title and cancellation of assignments).

In early January 2015, counsel for the Fletcher entities emailed Plaintiffs' counsel stating that "Last I heard, Columbia refused to sign the settlement agreement and [Columbia's counsel] was supposed to discuss this with you" (doc. 181-66) (bracketed text inserted). On January 13, 2015, counsel for the Fletcher entities emailed Defendants' counsel and asked "why Columbia is in the agreement. I thought Stim refused to join in?" (doc. 160-24). Defendants' counsel

responded: "I haven't addressed that issue with Stim but I assumed that the intention was for Columbia and others to be 'released parties' while only one or two entities were obligors under the settlement. . . ." (*Id.*)  To which, the Fletcher entities' counsel responded: "Fletcher doesn't want Columbia in the agreement. If it's not contributing anything, it shouldn't get the benefit of a release." (*Id.*)  Additionally, after English's refusal to sign corrected assignments for Defendants Alabama Energy, Benjamin Energy and Bradley Energy, Plaintiffs negotiated a separate settlement agreement with Fletcher (docs. 181-64, 65, 66).

In their respective motions for summary judgment, the parties dispute whether the Settlement Agreement is a valid and binding contract. Defendants argue that there was no mutual consent and therefore a lack of consideration, and that there was no meeting of the minds (doc. 160, p. 15-20).  Specifically, as to Defendant English, Defendants argue that no contract was formed because there was no valid acceptance between Plaintiffs and Defendant English. In support, Defendant English argues that although he signed the Settlement Agreement, counsel held English's signature in escrow, and never delivered the signature. Thus, English argues he never accepted the terms of the Settlement Agreement.  Defendants assert that it was English's intent for counsel to release his signature "once all his conditions concerning the putative settlement terms had been included." (Doc. 160, p. 11-13)

Defendants also assert that Defendant English did not have authority to sign for the Columbia and Occidental Defendants (doc. 160-33, Exh. GG; doc. 160-34, Exh. HH, counsel's affidavits).  Thus, they argue because Columbia and Occidental did not sign the Settlement Agreement, mutual assent among all the parties is lacking and the Settlement Agreement should not be enforced.

Alternatively, Defendants assert that the separate settlement agreement between Plaintiffs

and Fletcher was Plaintiffs' repudiation or rescission of the original Settlement Agreement. Therefore, Defendants argue that the Settlement Agreement is void and unenforceable.

Plaintiffs contend that the parties entered into a binding Settlement Agreement when Plaintiffs, Defendant English and the Fletcher entities signed the Agreement in triplicate in November 2014. Plaintiffs assert that emails among the parties counsel stating that the Settlement Agreement was acceptable, followed by the signatures, the creation of the Univalor Trust by Defendant English and Fletcher, and Defendant English's failed attempt to assign the working interests into the Univalor Trust, further evidence All of the Defendants' assent to the terms of the Settlement Agreement. Plaintiffs argue that the Settlement Agreement is valid, binding and enforceable.

Plaintiffs also assert that the English Defendants' counsel had authority to bind all Defendants by his email statements of acceptance and that English's signature on the Settlement Agreement binds all Defendants. As evidence that all Defendants intended to be bound by English's assent to the Settlement Agreement, Plaintiffs point to the executed Univalor Trust and the fact that Defendants Alabama Energy and Benjamin Energy, by way of Defendant English, attempted to execute assignments of working interests to the Trust. Plaintiffs perceive Defendants' refusal to correct the assignments as a repudiation of the binding and enforceable Settlement Agreement.

"A validly executed settlement agreement is as binding on the parties as any other contract." *Billy Barnes Enterprises, Inc. v. Williams,* 982 So.2d 494, 498 (Ala. 2007) (citing *Grayson v. Hanson,* 843 So.2d 146, 150 (Ala. 2002)). The elements of a valid contract include an offer and acceptance, consideration, and mutual assent or a meeting of the minds as to the terms essential to the formation of the contract. *Ex parte Grant*, 711 So. 2d 464, 464 (Ala. 1997)

(quoting *Strength v. Ala. Dep't of Fin., Div. of Risk Mgmt.*, 622 So. 2d 1283, 1289 (Ala. 1993)). "Alabama courts are clear that 'whether parties have entered a contract is determined by reference to the reasonable meaning of the parties' external and objective actions.'" *Mercedes-Benz U.S. Intern., Inc. v. Cobasys, LLC*, 605 F.Supp.2d 1189, 1198 (N.D. Ala. 2009) (quoting *Cook's Pest Control, Inc. v. Rebar,* 852 So.2d 730, 738 (Ala. 2002)). Under Alabama law, "[a] contract may consist of several communications between the parties, some in writing and some oral, each constituting a link in the chain which comprises the entire contract." *Mobile Attic, Inc. v. Kiddin' Around of Alabama, Inc.*, 72 So.3d 37, 45 (Ala. Civ. App. 2011) (quoting *Lawler Mobile Homes, Inc. v. Tarver*, 492 So.2d 297, 304 (Ala.1986)). Therefore, the series of emails as well as the Settlement Agreement, regardless of whether it was properly executed by all of the Defendants, may reflect the existence of an agreement between the parties.

Importantly, "the actions of the parties in reference to the contract can form the basis of mutual assent; that is, when the conduct of one party is such that the other party may reasonably draw the inference of assent to the agreement, that conduct is effective as assent." *Mobile Attic, Inc.*, 72 So.3d at 45. Although Defendant English asserts that his signature was never delivered because he intended for the signature to be held in escrow, the undisputed facts show that Defendant English executed the Univalor Trust and signed and recorded the assignments to the Trust. As a matter of law, as no reasonable factfinder could determine otherwise, Defendant English's conduct clearly shows his acceptance and assent to the Settlement Agreement on behalf of himself, Alabama Energy and Benjamin Energy. Accordingly, Plaintiffs' motion for summary judgment seeking judgment as a matter of law that Defendant English assented to terms of the Settlement Agreement is GRANTED.

However, there still remains a question of fact as to whether Defendant English had

authority to bind the Columbia and Occidental Defendants to the Settlement Agreement.

Plaintiffs argue that counsel for Defendant English effectively represented all of the Defendants

after counsel for Columbia concluded the negotiations and the parties began the drafting phase.

Plaintiffs argue that Defendant English's signature on the Settlement Agreement and subsequent

conduct manifests the assent of all of the English parties, meaning all of the Defendants (doc.

165, p. 12-15).

In rebuttal, Columbia and Occidental have presented affidavits to the effect that English

and his counsel did not represent them, and that Columbia and Occidental refused to sign the

Settlement Agreement. Defendants argue that the absence of mutual assent as to all parties to the

Settlement Agreement and evidence that the Fletcher entities objected to the inclusion of the

Columbia entities, indicates that there has been a failure of consideration, and thus no

enforceable Agreement exists.

Defendants also point out that the mutual covenants contained in the Settlement

Agreement were part of the consideration (doc. 160, p. 16; doc. 91-1, p. 5).  Specifically, the

Settlement Agreement sets forth as follows:

> Now therefore, in consideration of the mutual covenants contained in this
> Agreement, and for other good and valuable consideration, the receipt and
> sufficiency of which are hereby acknowledged, it is agreed to among the parties
> hereto as follows:

(Doc. 91-1, p. 5).  Thus, a lack of assent from a party to the agreement would vitiate any other

parties' assent.

Because genuine disputes of material fact exist as to whether all the parties entered into a

valid and binding Settlement Agreement, their cross-motions for summary judgment on the issue

of contract formation are DENIED. *See Walker v. Walker*, 144 So.3d 359, 364 (Ala. Civ. App.

2013) ("When the facts material to the question whether a contract was formed are in dispute, the fact-finder must resolve that dispute.") (citing *Sunnyland Mobile Homes, Inc. v. Thompson*, 384 So.2d 1111 (Ala.Civ.App.1980)); *Bartlett v. Preston*, 2013 WL 6531030, at *8 (N.D. Ala. 2013) (same).

III. <u>Conclusion</u>

Upon consideration, the motions are GRANTED in part, and DENIED in part, as set forth herein. Specifically, Plaintiffs' motion for summary judgment on the issue of assent is GRANTED as to Defendants Chester English III, Alabama Energy and Benjamin Energy, but otherwise DENIED as to the remaining Defendants; Defendants' motion for summary judgment on the issue of contract formation is DENIED; Defendants' motion for summary judgment seeking judgment as a matter of law that the Settlement Agreement is void for violation of the Statute of Frauds is DENIED; Defendants' motion for summary judgment seeking judgment as a matter of law that the Settlement Agreement is void for illegality is DENIED; and Plaintiffs' motion for summary judgment as to the Defendants' counterclaim for tortious interference with a business relation is GRANTED.

**DONE** and **ORDERED** this 25th day of May 2017.

<u>s / Kristi K DuBose</u>
**KRISTI K. DuBOSE**
**CHIEF UNITED STATES DISTRICT JUDGE**